Mr. Brooks May it please the court, my name is Dave Brooks and I represent Frank Lloyd I'll try not to call him Frank Lloyd or Mr. Wright during the hearing I sometimes make that oversight I represent him in a claim versus the Commissioner of Social Security Mr. Lloyd was severely injured in 2003 When he fell from a ladder at work, he severely shattered his left heel which required reconstructive surgery and he was in rehabilitation for a number of months For a period of time after that, he returned to work for a few years until he could no longer do so One of the issues that we raise in the case is listing 1.03 That is the listing that is regarding reconstructive surgery on a weight-bearing joint and clearly the heel fits within the listing definition of one of those weight-bearing joints The only other element to listing 1.03 is the inability to ambulate effectively Now, the first three points that I would like to make in regard to this is that ALJ completely failed to mention this listing whatsoever and the Commissioner doesn't dispute that The second point that I would make is the record is absolutely clear that Mr. Lloyd did in fact have reconstructive surgery on a weight-bearing joint and the Commissioner does not dispute that The next point that I would make is that the record is full of evidence that Mr. Lloyd cannot effectively ambulate Now, the Commissioner's defense to that is that we didn't meet the burden of proof and I think there are two aspects of the evidence that relate to this listing which I think are vitally important and the first deals with Dr. Coulter's opinion Dr. Coulter's opinion was the Social Security Administration's consultative examiner So, in his examination he made two statements One of the statements is that Mr. Lloyd had a grossly normal gait but also contained in that same report was Dr. Coulter said that Mr. Lloyd had problems with prolonged standing or ambulation The ALJ's response to this evidence was to rely on the grossly normal gait and reject as inconsistent the problems with prolonged standing and ambulation and that's the high watermark for the evidence for the ALJ in this case The other opinions, particularly of his treating physician indicate that my client had profound problems Every person who examined my client, who actually saw him indicated that he had difficulty with ambulation Now, the Commissioner also relies on the state agency record reviewers Those are non-examining physicians that had incomplete records and they never, in fact, obviously, as just record reviewers never saw Mr. Lloyd and I would respectfully suggest that even a regular person can determine whether a person has difficulty ambulating when they see that person Seeing is, in fact, believing, and these people had never seen him They were only reviewing the records All of what we've been talking about, that I've been talking about so far is about the left heel, but my client not only had a problem with his left leg but also with his right He had peripheral artery disease, which is under listing 4.12 Now, there are three parts to that listing and there's clearly acceptable imaging, namely a Doppler ultrasound that indicated not only did my client have reconstructive surgery in his left heel but he had peripheral artery disease in his right leg He also had intermittent claudication, which is the second element which is cramping or pain in the legs that occurs because of walking that requires rest Now, the third element of that listing, I think, is somewhat problematic because I don't think that that was fully explored in the record whether he had reduced systolic blood pressure in his leg but there's no question that he had deep vein thrombosis in the right leg Those are blockages, obviously, that have an impact Based on the foregoing, the severe impairment in the left heel and the severe impairment in the right leg difficulty in ambulation is a given under the facts, as far as I'm concerned And the ALJ found that the left heel was a severe impairment There's an odd fact here that really kind of relates to the state agency record reviewers is that in a subsequent application, my client, the initial doctors in the initial application found that he was, in fact, disabled when they had a more complete record to look at than the record reviewers did in this current case So my client has, in fact, subsequently, at this time, while this case is pending been found to be disabled The next issue that I would like to look at, which was also raised in the brief was the ALJ's disregard for the social security regulations, rulings, and case law in evaluating medical opinion evidence Neither the commissioner nor the district court disagreed that the ALJ failed to evaluate the medical opinion evidence based on the regulations In short, the ALJ gave weight to all the non-examining sources most who have never seen a majority of the records and clearly had never seen Mr. Lloyd Then there's the opinion of Dr. Gillaware, who is a non-examining source who testified at the hearing, who the judge gave considerable weight and said that his opinion was the most persuasive of all the evidence in the case and that makes absolutely no sense One of the severe impairments that my client has was COPD and there was a pulmonary function test, that was spirometry a pulmonary function test that was in the case Dr. Gillaware's opinion on that was to say that one of the components of the spirometry test was slightly abnormal Well, the one that he picked out of the six components was actually the one that my client did best in Every single one of the components in the spirometry test was abnormal and the one that he said was slightly abnormal was the one that my client did best in That absolutely reveals that Dr. Gillaware may be a physician but he doesn't know as much about spirometry testing as I do and probably not as much as many people in this courtroom He's not a pulmonologist and he has no basis that his opinion should be given more weight than a pulmonologist who actually did the spirometry testing It's inconceivable that somebody who doesn't understand what the test says and it's obvious by his testimony is given more weight than a pulmonologist I guess I would summarize this before I reserve the rest of my time is that when you look at the regulations and what is expected in evaluating opinion testimony under the regulations in the case law it's exactly upside down in this case The treating physician is given no weight little if any weight given to the treating physician of long term Two consultative examining physicians who have actually met Mr. Lloyd that were employed by the Social Security Administration are ignored altogether The only doctors in this case that are given weight are those that never saw him at all and that is clearly a problem with not following the regulations in regard to that Unless there's questions, I'll reserve the rest of my time Thank you Mr. Brooks Ms. Cohn May it please the court, my name is Emily Cohn on behalf of the commissioner in this case Your honors, Mr. Lloyd brings up the issue of listing 1.03 dealing with reconstructive surgery of a major weight bearing joint Essentially, listing 1.03 to meet or meddle to equal listing 1.03 the plaintiff must show an inability to ambulate effectively which is also defined by the regulations at 1.00b2 which is a very specific definition of effective ambulation Although it is true that ALJ did not mention 1.03 she thoroughly discussed listing 1.02 which has the exact same requirement of an inability to ambulate effectively Mr. Lloyd points to the fact that doctors said he had problems with prolonged ambulation However, the ALJ pointed out in more than one occasion Mr. Lloyd was able to walk grossly normally without an assistive device Nowhere in Mr. Lloyd's brief or in his argument has he shown that he meets the criteria for listing 1.03 Similarly, with listing 4.12 for peripheral arterial disease Mr. Lloyd so much as admitted that he did not meet the final criteria for systolic blood pressures It is clear through case law from this court and the Supreme Court that appellants asking this court to find that they medically meet or medically equal a listing must show that they meet every criteria and every part of that listing Furthermore, the administrative law judge relied on Dr. Gilloir, the medical expert's testimony that although Mr. Lloyd's treating physician diagnosed him with peripheral arterial disease such a diagnosis was not supported by the objective findings Dr. Gilloir was a board certified internal medicine and gastroenterology specialist who was able to review all of the medical records at the time of the hearing Mr. Lloyd's other argument that the administrative law judge wrongfully evaluated the opinion evidence is also unfounded The ALJ did give weight to the state agency reviewing physicians However, she found additional restrictions were warranted Those state agency reviewing physicians found that Mr. Lloyd could perform a reduced range of medium work The ALJ credited Mr. Lloyd's allegations finding him further reduced to a reduced range of light work As far as the pulmonary function test, the spirometry test It is true that Dr. Gilloir is not a pulmonologist However, he is board certified in internal medicine Mr. Lloyd was represented by an attorney at the hearing The ALJ specifically asked that attorney if she had any objections to Dr. Gilloir's qualifications which were in the record to which the attorney responded they did not The pulmonary function test clearly shows that Mr. Lloyd's findings were minimally abnormal as explained in our brief as findings as much as 70% of predicted values are considered normal One of Mr. Lloyd's predicted values was at 69% The ALJ did not ignore any opinion evidence She thoroughly discussed the opinions from all of the consultative examiners state agency reviewers, treating source physicians, and the medical expert And Mr. Lloyd simply has not shown any reversible error on the ALJ's part Unless this court has any further questions, the commissioner would like to rest on her brief Thank you, Ms. Cohn Anything further, Mr. Brooks? First of all, I believe that the opposing counsel's statement that there's a specific definition of ineffective ambulation is not correct There's given certain examples in listing 1.02, or actually it's in the 1.00 listings There is a definition that's given, but it says this is not an exclusive definition And one of it is that you can walk a block on even or uneven ground at a normal pace And I would respectfully submit that's not even a real question Clearly this man could not ambulate effectively The other matter that I would bring up is The fact is that anytime on a pulmonary function test you get less than 100% of expected That is an abnormal finding. It's just a matter of degree Usually a 70% is considered anything 70% or above as mild But when it gets more than below 70%, then it's considered moderate So every aspect of my client's pulmonary function test, if it's accurately read and understood In fact, that's what it said. The diagnosis was clearly placed on the pulmonary function test And my client had chronic obstructive pulmonary disease And I just ask you to consider that and ask that you remand the case Thank you very much, your honors Thank you, counsel. The case is taken under advisement We will now go back